UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

EARL PITTS,

        Defendant.
_____/

No. 20-20028

District Judge Paul D. Borman
Magistrate Judge R. Steven Whalen

**OPINION AND ORDER DENYING MOTION FOR BOND**

Defendant Earl Pitts is charged by indictment with Receipt of a Firearm while Under Indictment, 18 U.S.C. § 922(n). On January 17, 2020, following a detention hearing, I ordered him detained pending trial. ECF No. 10. Before the Court at this time is his Emergency Motion for Bond [ECF No. 19], premised on changed circumstances, specifically the risks the COVID-19 pandemic places on defendants who are detained. Defendant is detained at the Federal Detention Center in Milan, Michigan ("FDC Milan"). For the reasons discussed below, the motion is DENIED.

### I.   FACTS

#### A.   Original Detention Hearing

[*The audio files of the detention hearing and decision on January 17, 2020 are found at ECF Nos. 8 and 9*].

The evidence proffered at the detention hearing showed that Defendant has a

-1-

history of noncompliance with his conditions of State release, and of failure to appear in state court, including while on a GPS tether.  In addition, and relevant to the question of whether Defendant would pose a danger to the community if released, he has a troubling history of gun-related violence. On November 15, 2019, he was with a group of individuals, at least one of whom fired shots into a car, wounding one of the occupants. A minor child was in the car that was shot at.  Although there was no specific evidence that Defendant was the shooter, the incident continued a short time later, when the occupant of the car that was shot at was at a Family Dollar Store. Video shows the Defendant shooting into the store, and Defendant in fact admitted to doing so.  In another incident about a month later, on December 23, 2019, Defendant was identified as the shooter at an apartment complex, where about 10 shots were fired from a 9 mm firearm. Defendant was on a GPS tether at that time. The following January, Defendant was found in the back seat of an automobile, in proximity to a 9 mm firearm.

Based on Defendant's history of non-compliance with even very strict conditions of supervision, including electronic monitoring, his history of failure to appear, and his active participation in shootings that could well have culminated in first-degree murder charges, I found that the government had carried its burden of proving by a preponderance of the evidence that there were no conditions or combinations thereof that would reasonably assure the Defendant's appearance as required, and proving by clear and convincing evidence that there were no conditions or combinations thereof that would

reasonably assure the safety of the community. I therefore ordered Defendant detained pending trial. ECF No. 10.

### B. Evidentiary Hearing on Present Motion

The present motion centers on the effect of the COVID-19 crisis on prisoners at FDC Milan. Daniel Cloe, who has oversight of COVID-19 protocols at FDC Milan, testified at the hearing on this motion. He stated that in total there have been 5 active COVID cases at the detention center, with only 2 active cases at the time of his testimony. There was previously one active case in the West Unit, where Defendant is located, but there are currently no active cases in the West Unit. He testified that if a prisoner has symptoms, he is tested, and placed in isolation in a single cell in the North Unit.[1] If an asymptomatic prisoner has had contact with a symptomatic prisoner, that person is quarantined. The quarantine unit for the detention center is on the third floor of FCI-Milan.

In the West Unit, where Defendant is housed, there are two prisoners per cell. As of April 27, 2010, the inmates are each given 3 cloth face masks, and are instructed as to the importance and use of the masks. Detainees are allowed out of their cells eight at a time, and for 30 minutes per day. They must wear masks while out of their cells.

Each inmate is provided with his own bar of soap, and can also purchase additional

---

[1] Mr. Cloe testified that the detention center has about 600 Abbot tests, which give results in about 15 minutes.

soap. The high-traffic areas, including railings, cell handles, telephones, and computers are continuously cleaned throughout the day. Staff are screened daily through taking temperatures and responding to a questionnaire.

Mr. Cloe testified that the Defendant has no known medical problems. He has had only two cell mates during his confinement, and neither had any signs of COVID or any other medical issues.

## II. STATUTORY BASIS FOR RECONSIDERATION OF BOND

Defendant bases his motion on 18 U.S.C. §§ 3142(f)(2) an 3142( i ). Section 3142(f)(2) provides, in pertinent part:

> "The [detention] hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."

Section 3142 ( i ) provides:

> "The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense *or for another compelling reason*." (Emphasis added).

## III. DISCUSSION

The COVID pandemic has affected all corners of society, with jails and prisons posing unique challenges. These challenges "include, among other things, the highly congregational environment, the limited ability of incarcerated persons to exercise

effective disease prevention measures (e.g., social distancing and frequent handwashing), and potentially limited onsite healthcare services." *United States v. Washington*,2020 WL 2526122, at *2 (E.D. Mich. May 18, 2020), citing *United States v. Kennedy*, 2020 WL 1493481, at *2 (E.D. Mich. Mar. 27, 2020).  As such, I agree that COVID is new and previously unknown factor that, at a minimum, supports an inquiry under § 3142(f)(2). *See United States v. Bothra*, 2020 WL 2611545 (6th Cir. 2020). I will also consider whether COVID is a "compelling reason" to release the Defendant under § 3142 ( i ). The dispositive question is whether this new information has a material bearing on conditions of release that would reasonably assure the Defendant's appearance and the safety of the community.

Notwithstanding the COVID crisis, Defendant has not shown either that he has an elevated and particularized risk of contracting the disease, or that the protocols at FDM Milan are insufficient to provide reasonable protection.  Mr. Cloe testified that the Defendant has no known health issues, and has not been in contact with anyone who does.  The Defendant does not contend otherwise. *See United States v. Lee*, 2020 WL 1540207, at *3 (E.D. Mich. Mar. 30, 2020)(courts must evaluate the particularized risks to the individual defendant).  *Compare United States v. Knight*, E.D. Mich. No. 18-20180, Dkt. No. 97 (release granted where defendant's "severe respiratory condition" put him at an elevated risk" and made him "particularly vulnerable to this disease.").

In addition, FDC Milan has put protocols in place that minimize the risk to

detainees, including isolation and quarantine of individuals who are symptomatic, as well as those that have been in contact with symptomatic detainees, providing soap and face masks, limiting the number of detainees who are allowed out of their cells at a time, and limiting the time out of their cells to 30 minutes, as well as screening of staff and increased cleaning of common areas. *See United States v. Bonner*, 2020 WL 1888830, at *2 (E.D. Mich. Apr. 16, 2020) ("The Federal Detention Center at Milan, Michigan, where Defendant is currently housed, has instituted several measures to attempt to contain the spread of COVID-19, including the screening and quarantining of new detainees, restriction of visitors, increased sanitation, and screening of employees."). There are no reported COVID cases in the West Unit where the Defendant is housed.

In *United States v. Bothra*, 2020 WL 2611545 (6th Cir. May 21, 2020), the Sixth Circuit held that even if someone's age or medical condition might render them more susceptible to the disease, "without more, a generalized risk of contracting COVID-19 does 'not amount to a 'material change of circumstances warranting a renewed evaluation of [a] prior detention order' " (quoting *United States v. Nero*, 2020 WL 1672656 at *2 (E.D. Mich. Apr. 6, 2020)). A plethora of decisions from this and other districts agree that a generalized claim or risk of contracting the virus is insufficient to reconsider a detention decision under the Bail Reform Act. *See United States v. Washington*, 2020 WL 2526122, at *2–3 (E.D. Mich. May 18, 2020)(generalized risk of COVID does not warrant renewed evaluation of a prior detention order); *United States v. Bonner, supra* at

\*2 (generalized concerns insufficient "when a defendant has offered concerns about COVID-19 that are no different than those shared by all detainees"); *United States v. Tawfik*, 2020 WL 1672655, at \*2 (E.D. Mich. Apr. 6, 2020)(same); *United States v. Dodd*, 2020 WL 1547419, at \*3 (D. Minn. Apr. 1, 2020) (collecting cases).

Finally, the factors that supported the Defendant's detention in the first place have not changed, and given his history of non-compliance with strict conditions of supervision and his reckless and dangerous use of firearms, there are still no conditions that would reasonably assure his appearance as required and the safety of the community. *See United States v. Washington*, 2020 WL 2526122, at \*2–3 ("While the novel coronavirus presents a great health threat, it does not, by itself, entitle a dangerous person's release from jail."); *United States v. Eubanks*, 2020 WL 1814090, at \*2 (E.D. Mich. Apr. 9, 2020) ("The Court need not discuss whether the COVID-19 pandemic constitutes an 'exceptional reason' in this case, because Defendant cannot demonstrate that he would not pose a danger to the public if released.").

## IV.  CONCLUSION

Accordingly, Defendant's Emergency Motion for Bond [ECF No. 19] is DENIED.

Pursuant to 18 U.S.C. § 3145(b), the Defendant may file a motion seeking *de novo* review of this Order by the District Judge.

IT IS SO ORDERED.

s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: May 27, 2020

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on May 27, 2020 electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager
